The document below is hereby signed.

Signed: June 9, 2014



_S. Martin Teel Jr._
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| MOSTAFA EL-ERIAN and JOAN | ) | Case No. 12-00515 |
| THOMAS EL-ERIAN, | ) | (Chapter 7) |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| MARC ALBERT, CHAPTER 7 | ) | |
| TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | Adversary Proceeding No. |
| | ) | 13-10024 |
| v. | ) | |
| | ) | |
| GREEN TREE SERVICING, LLC, | ) | |
| | ) | For Publication in West's |
| Defendant. | ) | Bankruptcy Reporter |

<u>MEMORANDUM DECISION RE CROSS-MOTIONS FOR SUMMARY JUDGMENT</u>

The court will grant the defendant's motion for summary

judgment (and deny the plaintiff's) for the following reasons.

I

Mostafa A. El-Erian and Joan Thomas El-Erian are debtors in

a case commenced in 2012 under chapter 7 of the Bankruptcy Code

(11 U.S.C.).  Marc E. Albert, the trustee in that case, seeks in

this adversary proceeding to avoid the lien, granted by a _Deed of_

*Trust*, on the debtors' real property located at 3101 New Mexico Avenue, N.W., #814, Washington, D.C. (the "Property").[1]  The *Deed of Trust* secures repayment of a loan evidenced by a promissory note.  The defendant, Green Tree Servicing, LLC, is the servicer of the note and the *Deed of Trust*.[2]  The *Deed of Trust* was recorded in the land records of the District of Columbia on October 3, 2008.

The *Deed of Trust* contains both a correct and an incorrect description of the Property.  It was indexed in the land records of the District of Columbia using the wrong Square and Lot numbers for the Property.  Albert seeks to avoid the *Deed of Trust* based on this error in its indexing and the error in the property description in the contents of the *Deed of Trust* pursuant to 11 U.S.C. § 544, both as a hypothetical judgment lien creditor as of the petition date (§ 544(a)(1))[3] and as a hypothetical bona fide purchaser of the real property as of the

_____

[1]  The debtors later conveyed the Property to a relative, but the Superior Court of the District of Columbia entered an order that Albert contends nullified that transfer, such that the Property is property of the bankruptcy estate.

[2]  The owner of the note and *Deed of Trust* originally was First Savings Mortgage Corporation but since October 1, 2008, has been Federal National Mortgage Association.  For ease of discussion, I refer to the *Deed of Trust* as Green Tree's *Deed of Trust*.

[3]  Paragraph 20 of the Complaint alleges that the *Deed of Trust* "stands behind the Trustee's bankruptcy lien."  I view that as an invocation of § 544(a)(1).

petition date (§ 544(a)(3)).

II

The facts recited herein are undisputed, and those facts

entitle the defendant to judgment as a matter of law.

A.

THE *DEED OF TRUST*'S CONFLICTING
LISTING OF THE PROPERTY'S SQUARE AND LOT NUMBERS

The *Deed of Trust* listed both correct and incorrect Square

and Lot numbers for the Property.   The Property's correct Square

and Lot numbers are Lot 3675 in Square 1601.[4]

(1).   *The Deed of Trust's Erroneous Description of the
Property's Square and Lot Numbers*.

The *Deed of Trust* was prepared using a standard form, to

which information was added pertinent to the specific

transaction.   *See* Def. Ex. 3 (Dkt. No. 18-3).   On page 4, under

TRANSFER OF RIGHTS IN THE PROPERTY,[5] the *Deed of Trust* stated:

> Borrower [the debtors] irrevocably grants and conveys to
> Trustee, in trust, with power of sale, the following

---

[4]   The Property is part of the Sutton Towers Condominium for
which the Square and Lot numbers are Lot 0007 in Square 1601. The
plaintiff's Statement of Undisputed Material Facts erroneously
states that the debtors' residence (4414 Lowell Street NW,
Washington DC 20016) is located in Sutton Towers.   *See* Pl. Mtn.
for Summary Judgment ("Pl. Mtn.") (Dkt. No. 24) at ¶ 3.   It is
the Property that is located in Sutton Towers.

[5]   The *Deed of Trust* defined the term "Property" as meaning
"the property that is described below under the heading 'Transfer
of Rights in the Property.'"   Pages 4 and 5 of the *Deed of Trust*
contained that portion describing the Property.   Copies of those
pages (numbered GT000027 and GT000028) are attached hereto as an
Exhibit.

3

described property located in the District of Columbia:
     **SEE EXHIBIT 'A', ATTACHED HERETO AND MADE A PART
HEREOF**

The non-bolded language was pre-printed form language.  The
bolded language was added after the form language.  Then followed
many lines of empty space before the next pre-printed portion of
the *Deed of Trust*.  That empty space obviously is generally
intended for typing in a full legal description of the property,
but the space was not utilized in this instance: Exhibit A
contained a full legal description that would not have fit in
that space.  These words followed that space:

Parcel ID Number: **SQUARE 1607 LOT 0058** which currently
has the address of **3101 NEW MEXICO AVE., NW #814** . . .
Washington, District of Columbia **20016**[.]

Again, the non-bolded language was pre-printed form language, and
the bolded language was added to the form.  Although this
description correctly identified the Property as having the
address of 3101 New Mexico Ave., NW #814, the reference to Square
1607 Lot 0058 was incorrect.  The real estate bearing the Parcel
ID Number of Square 1607 Lot 0058 is the debtors' residence
located elsewhere, not the Property.

    (2).  *The Deed of Trust's Correct Description of the Square
and Lot Numbers.*

    The Exhibit A that was made part of the *Deed of Trust*'s
description of the Property, and that was the next page of the
*Deed of Trust*, included a correct listing of the Square and Lot

numbers.  That next page, page 5 of the *Deed of Trust*, was

titled:

**EXHIBIT A**
**LEGAL DESCRIPTION**

It set forth the following legal description:

> Unit 814 in the Condominium known as "Sutton Towers
> Condominium", according to the Declaration of Condominium
> [and amendments thereto] among the Land Records of the
> District of Columbia, and as per plat recorded in the
> Office of the Surveyor for the District of Columbia . .
> . [as amended] . . . .  Together with an exclusive
> assignment of limited common element Parking Space Nos.
> 319 & 320, and together with an undivided percentage
> share interest in the Common Elements of said Sutton
> Towers Condominium as set forth in said Declaration of
> Condominium and the Exhibits thereto.
>
> **Said condominium project is situate on Lot 7 in Square
> 1601** in the subdivision made by LAR Associates et al., **as
> per plat recorded** in Liber 167 at folio 127 **in the Office
> of the Surveyor for the District of Columbia.**
>
> **Said property being now known for assessment and taxation
> purposes as Lot 3675 in Square 1601.**

[Emphasis added.]  This "Legal Description" accurately described

the Property by Square and Lot as being Lot 3675 in Square 1601.

B.

THE CORRECT DESCRIPTION OF THE
PROPERTY IN THE *REAL PROPERTY RECORDATION AND
TRANSFER TAX FORM* SUBMITTED TO THE RECORDER OF DEEDS

There is no suggestion in the record that there was any

deliberate attempt by anyone to cause an indexing of the *Deed of*

*Trust* by an erroneous Square and Lot number.  Indeed,

contemporaneously with the filing of the *Deed of Trust*,

Counselors Title, LLC, the title company employed for the
September 26, 2008 transaction, completed and caused to be filed
with the Office of Recorder of Deeds a *Real Property Recordation
and Transfer Tax Form FP 7/C* which correctly described the
property as having an address of "3101 New Mexico Avenue, NW
#814" and as being Lot 3675 within Square 1601.

C.

THE MISINDEXING OF THE *DEED OF TRUST*

After the *Deed of Trust* was recorded in the land records on
October 3, 2008, the Recorder of Deeds indexed the *Deed of Trust*
in the Square and Lot Index by Square 1607, Lot 0058 (the
erroneous Square and Lot description), not by Square 1601, Lot
3675 (the correct Square and Lot description), and similarly
indexed the *Deed of Trust* in the Grantor/Grantee Index as
relating to Square 1607, Lot 0058, and not as relating to Square
1601, Lot 3675.[6]

Certain postpetition events do not affect the plaintiff's
rights under section 544, as the issue of avoidability is tested
as of the petition date.  On February 19, 2013, Counselor's
Title, LLC filed with the Recorder of Deeds a Re-Recording

_____

[6]  Green Tree has provided evidence that the policy of the
Recorder of Deeds is that a deed containing two different Square
and Lot descriptions of a property should be indexed under both.
*See* Def. Ex. F (Dkt. No. 18-10).  I need not decide whether that
has any impact on the issues presented (for example, whether it
was negligence of the Recorder of Deeds that proximately caused
the lack of a proper indexing of the *Deed of Trust*).

6

Certification and an amended deed of trust that corrected the Square and Lot numbers.  *See* Pl. Ex. 10 (Dkt. No. 24-10).  These were recorded on February 26, 2013.  Def. Mtn. for Summary Judgment ("Def. Mtn.") (Dkt. No. 18) ¶ 28.

III

Summary judgment is granted when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (incorporated by Fed. R. Bankr. P. 7056); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  In evaluating a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party.  *Arrington v. United States*, 473 F.3d 329, 333 (D.C. Cir. 2006).

IV

A.

THE TRUSTEE'S AVOIDANCE POWERS

Section 544(a) of the Bankruptcy Code (11 U.S.C.) gives the trustee the rights of a hypothetical judgment lien creditor or a hypothetical bona fide purchaser of real property from the debtor at the time of the commencement of the case.  11 U.S.C. §§ 544(a)(1), (3).  The trustee can avoid a lien on real property if a bona fide purchaser or judgment lien creditor could avoid the lien.  *Hamilton v. Washington Mut. Bank FA (In re Colon)*, 563 F.3d 1171, 1173 (10th Cir. 2009).  State law governs who may be a

7

bona fide purchaser or judgment lien creditor for purposes of
section 544(a).  *Sovran Bank v. United States (In re Aumiller)*,
168 B.R. 811, 818 (Bankr. D.D.C. 1994).

Under District of Columbia law, a deed conveying an interest
in real property is not effective against "subsequent bona fide
purchasers . . . without notice of said deed" unless it is
recorded.  D.C. Code § 42-401; *see also Clay Properties, Inc. v.
Washington Post Co.*, 604 A.2d 890, 894 (D.C. 1992) (referring to
the previous codification of this statute, at D.C. Code § 45-
801).  In particular, as to third parties, a deed conveying an
interest in real property "only take[s] effect from the time of
its delivery to the Recorder of Deeds for record."  D.C. Code
§ 42-401.

Notice may be actual, constructive, or inquiry.  *Clay
Properties, Inc.*, 604 A.2d at 895.  A trustee's actual knowledge
of the contents of a deed is irrelevant under § 544(a) as the
trustee assumes the role of a bona fide purchaser or judgment
creditor without actual knowledge.  *In re Aumiller*, 168 B.R. at
818.  However, that hypothetical purchaser may be held to
constructive or inquiry notice.  *McCannon v. Marston*, 679 F.2d
13, 16-17 (3d Cir. 1982).  If that constructive notice or inquiry
notice would put the purchaser on notice of the contents of the
*Deed of Trust*, then, like a purchaser with actual notice of the
contents, the *Deed of Trust* would be effective against the

purchaser.  The District of Columbia Court of Appeals has

described inquiry notice as follows:

> A purchaser is held to be on inquiry notice where he or
> she is aware of circumstances which generate enough
> uncertainty about the state of title that a person of
> ordinary prudence would inquire further about those
> circumstances. The purchaser is on inquiry notice of all
> facts and outstanding interests which a reasonable
> inquiry would have revealed.

*Clay Properties, Inc*. 604 A.2d at 895.  Constructive notice has

come to mean record notice.  *Id.* at 895 n.15.

A judgment lien creditor fares no better than a hypothetical

purchaser.  If a purchaser would be on inquiry or constructive

notice, so would a judgment lien creditor.  *In re Aumiller*, 168

B.R. at 818-19 (applying the same analysis of constructive and

inquiry notice under District of Columbia law to both a purchaser

and a judgment lien creditor).  Because a judgment lien creditor

fares no better than a purchaser, the following analysis, for

ease of discussion, addresses the issue of a purchaser being on

inquiry or constructive notice, analysis that applies as well to

a judgment lien creditor.

B.

A SUBSEQUENT PURCHASER WOULD BE CHARGED WITH INQUIRY NOTICE

The undisputed facts demonstrate that a prospective

purchaser would be charged with inquiry notice of the contents of

the *Deed of Trust*.  A search of the Grantor/Grantee Index

conducted at the commencement of the case would have revealed the

9

*Deed of Trust*, but the Index would have incorrectly indicated that the *Deed of Trust* related to the debtors' residence. Nevertheless, entries on the Grantor/Grantee Index provided information that I conclude, as a matter of law, would have put a hypothetical purchaser on inquiry notice that would lead to a discovery of the *Deed of Trust*.

(1). *Knowledge of the Contents of the Deed of Trust Would Give Notice that the Property is Encumbered.*

First, it is important to point out that upon reviewing the contents of the Deed of Trust, a reasonable purchaser would be on notice that the *Deed of Trust* encumbers the Property, and, therefore, someone charged with knowledge of the contents of the *Deed of Trust* would be on notice that the *Deed of Trust* encumbers the Property (and not the debtors' residence).  The intention of the parties to the *Deed of Trust* is readily apparent: the Property at issue is "3101 NEW MEXICO AVE., NW #814" consistent with the Square and Lot description appearing on Exhibit A to the *Deed of Trust*, with the other Square and Lot description, which does not jibe with the street address, being an obvious error. Accordingly, the *Deed of Trust* would be effective against a purchaser with actual knowledge of the contents of the *Deed of Trust*.

Even if the *Deed of Trust* were ambiguous, inquiry notice would make the *Deed of Trust* effective against a purchaser of the Property despite the *Deed of Trust* having included both erroneous

10

and correct Square and Lot descriptions.  The purchaser would be obligated to inquire further regarding whether the intent of the debtors had been to grant a deed of trust as to the Property, and this inquiry would reveal that the *Deed of Trust* is with respect to the Property.  *See In re Colon*, 563 F.3d at 1183 (finding that a reasonably prudent purchaser who reviewed a mortgage that provided the property's correct address and parcel identification number, but misstated the Lot number, would recognize that a problem exists, make inquiry and discover the error in the mortgage).

(2).  *The Notice of Foreclosure Sale Put Any Reasonable Purchaser on Inquiry Notice*.

The Grantor/Grantee Index reflects that on September 1, 2010, "BAC HOME LOANS SERVICING LP" filed a "NOTICE FORCLO SALE" regarding the Property (correctly described in the Index as Square 1601, Lot 3675).[7]  *See* Def. Ex. C (Dkt. No. 18-7).  At the hearing on the cross-motions for summary judgment, the plaintiff acknowledged that this notice of foreclosure related to Green Tree's *Deed of Trust* (which as of September 1, 2010, was being serviced by a Bank of America subsidiary).  Anyone searching either the Grantor/Grantee Index or the Square and Lot Index

---

[7]  The Grantor/Grantee Index listings discussed in this decision refer to the results from a search of the Grantor/Grantee Index for "El-Erian" conducted prior to the commencement of this case.  The results of this search appear in Plaintiff's Exhibit 9 and Defendant's Exhibit C.

would discover this Notice of Foreclosure relating to the Property, and, on examining the Notice, would learn of the existence of the *Deed of Trust* whose enforcement was the subject of the Notice of Foreclosure. Therefore, a hypothetical bona fide purchaser would be charged with what a proper investigation of the Notice of Foreclosure would reveal, namely, the *Deed of Trust* on the Property. *See Clay Properties, Inc.*, 604 A.2d at 895 ("The purchaser is on inquiry notice of all facts and outstanding interests which a reasonable inquiry would have revealed.").

The trustee argues that because the *Deed of Trust* was indexed under the Square and Lot Number for the debtors' residence, no reasonable purchaser would be charged with inquiry notice. *See* Pl. Mtn. at 14. Specifically, the trustee contends that no reasonable purchaser would have made further inquiry about a deed of trust indexed as relating to the debtors' residence. But this argument ignores the fact that it is the Notice of Foreclosure that puts a reasonable purchaser on inquiry notice, not the *Deed of Trust* itself. After reviewing the Notice of Foreclosure indexed as relating to the Property, the reasonably prudent purchaser would locate in the Grantor/Grantee Index the *Deed of Trust* to which the Notice of Foreclosure related, and thereby learn that the Property was encumbered. *See Maine Nat'l Bank v. Morse (In re Morse)*, 30 B.R. 52, 55 (B.A.P.

12

1st Cir. 1983) (finding that the inconsistency in the chain of title–namely, that a certificate of foreclosure was recorded after the recording of a release of the subject mortgage–would put a prospective purchaser on inquiry notice of all that inquiry of the bank would reveal, *i.e.*, that the bank remained a mortgagee of the property and that the release was erroneously recorded); *see also Macleod v. Suntrust Bank Northwest Georgia (In re Henderson)*, 284 B.R. 515, 519 (Bankr. N.D. Ga. 2002) (same).

At oral argument, counsel for the plaintiff argued that the determination of what a reasonably prudent purchaser would do is a question of fact for a fact finder. However, summary judgment is appropriate where the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986). Therefore, where the only conclusion that can be drawn from the undisputed facts is that a reasonably prudent purchaser would be on inquiry notice, summary judgment is

proper.[8]  Here, the only reasonable conclusion a fact finder
could reach is that the existence of the Notice of Foreclosure in
the index would put a purchaser on inquiry notice.  Although a
closer question, the same analysis applies to inquiry notice
based on the Power of Attorney discussed next.

(3).  *The Power of Attorney Filed the Same Day as the Deed
of Trust.*

As noted previously, the *Deed of Trust* was filed with the
Recorder of Deeds on October 3, 2008 (and was indexed in the
Grantor/Grantee Index and the Square and Lot Index as relating to
the debtors' residence, Square 1607, Lot 0058).  On the same
date, October 3, 2008, there was recorded a Power of Attorney
from Mr. El-Erian to Mrs. El-Erian (executed while he was in
Baghdad), for the purpose of authorizing her to execute any
documents related to a refinancing of the Property.

---

[8]  The issue is whether a purchaser, upon seeing the Notice
of Foreclosure, would have been unreasonable in not making
inquiry.  Summary judgment is appropriate on a question of
reasonableness "when only one conclusion about the conduct's
reasonableness is possible."  *In re Software Toolworks Inc.*, 50
F.3d 615, 622 (9th Cir. 1994) (quoting *West v. State Farm Fire &
Cas. Co.*, 868 F.2d 348, 351 (9th Cir. 1989)); *see also Westra v.
Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005).
Accordingly, summary judgment can be appropriate as to the issue
of inquiry notice.  *See Hancock v. HomEq Servicing Corp.*, 526
F.3d 785, 787 (D.C. Cir. 2008) (affirming the district court's
grant of summary judgment that was based on a conclusion that
inquiry notice applied).

(a).   <u>The Effect of Indexing of the Power of Attorney in the
Square and Lot Index.</u>

The Power of Attorney was correctly indexed in the Square
and Lot Index as relating to Square 1601, Lot 3675.   *See* Pl. Ex.
8 (Dkt. No. 24-8) (search conducted November 15, 2011).
Therefore, a search of the Square and Lot Index would have
revealed the Power of Attorney as relating to the Property.   As a
result, a reasonable purchaser would examine this Power of
Attorney.   Upon examining the Power of Attorney, one would
discover that it was for the purpose of executing refinancing
documents relating to the Property, and that the only deed of
trust recorded on the same date was the *Deed of Trust* at issue.
Upon examining the *Deed of Trust* as the only deed of trust of the
same date, one would discover that it related to the Property.
Therefore, as with the Notice of Foreclosure, the Power of
Attorney would put a prospective purchaser on inquiry notice of
the *Deed of Trust*.

(b).   <u>The Effect of Indexing of the Power of Attorney in the
Grantor/Grantee Index</u>.

Aside from the indexing of the Power of Attorney in the
Square and Lot Index, a prospective purchaser would be on inquiry
notice of the *Deed of Trust* based on that Index's listing of the
Power of Attorney, as well as other entries in the
Grantor/Grantee Index.   That path to inquiry notice is more
convoluted than that based on the Notice of Foreclosure or on the

Square and Lot Index's listing of the Power of Attorney, but also shows that, as a matter of law, the Grantor/Grantee's listing of the Power of Attorney would have placed a hypothetical bona fide purchaser on inquiry notice, as of the commencement of the case, of the *Deed of Trust*.  Below is a summary of this third path to inquiry notice, followed by a more detailed explanation.

As set forth below, various listings on the Grantor/Grantee Index treat the El-Erians as having had an interest in Square 1601, Lot 0007 (the Sutton Towers Condominium), although no Grantor/Grantee Index listing reflected that such interest had been conveyed to them.  However, anyone examining Mr. El-Erian's title (and Mrs. El-Erian's later title) to the Property would see that the Property (Square 1601, Lot 3675) was part of the Sutton Towers Condominium (Square 1601, Lot 0007).  Mr. El-Erian bought the Property in 1989, granting a deed of trust incident to the purchase.  A person searching the Property's chain of title would discover that the Grantor/Grantee Index listed the *1989 deed of trust* grantee as to the Property as having later filed a release only as to Square 1601, Lot 0007, rather than as to the Property. A searcher would realize from that entry that Square 1601, Lot 0007 (the Square and Lot for Sutton Towers Condominium) on the Grantor/Grantee Index actually referred to the Property.  That searcher would treat later documents indexed as relating to Square 1601, Lot 0007 (including the Power of Attorney) as likely

16

relating to the Property and would thereby discover that the *Deed of Trust*, misindexed as relating to the debtors' residence, actually related to the Property.  This reasoning is explained more fully below.

　　(i).  *The Margolius Trust and the Bank-Fund Notice of Foreclosure Listed on the Grantor/Grantee Index as Relating to the Condominium Building*.

　　First of all, a prospective purchaser would be on notice that the Grantor/Grantee Index often mistakenly lists documents relating to the Property as relating to Square 1601, Lot 0007 (the Square and Lot for the condominium building).  For instance, the Grantor/Grantee Index reflects that on February 17, 1989, Sutton Realty Partners granted a deed as to the Property (listed on the Grantor/Grantee Index correctly as Square 1601, Lot 3675) to Mr. El-Erian, and that on the same date, Mr. El-Erian granted a "TRUST" to Philip N. Margolius as to the Property (again, listed on the Grantor/Grantee Index correctly as Square 1601, Lot 3675).  (The Property was later titled in the name of Mr. and Mrs. El-Erian.)  Anyone purchasing the Property would be on constructive notice of the Margolius Trust.  Such a purchaser, upon examining the Grantor/Grantee Index, would note that the Index reflected that on August 27, 1992, Margolius granted Mr. El-Erian a "REL" (which suggests the granting of a release of the earlier "TRUST" granted on February 17, 1989), **but the Index described the subject property as Square 1601, Lot 0007 (which is**

17

**the Square and Lot description for the Sutton Towers Condominium at which is located the Property).** There is no other entry on the Grantor/Grantee Index regarding the Margolius Trust. Moreover, the Grantor/Grantee Index did not disclose the granting of any deed to Mr. El-Erian of a property bearing that Square 1601, Lot 0007 description. Therefore, a prospective purchaser would be on notice that the Index listed some documents that actually related to the Property as relating to Square 1601, Lot 0007.

Similarly, the Grantor/Grantee Index reflected that on June 7, 2002, Bank-Fund Staff Federal Credit Union filed a "NOTICE FORECLO SALE" relating to property described on the Grantor/Grantee Index as Square 1601, Lot 3675 (the correct Square and Lot description of the Property). A purchaser examining the Grantor/Grantee Index would note that the Grantor/Grantee Index reflected that on November 15, 2006, Bank-Fund Staff Federal Credit Union filed a "CERTIFICATE OF SATIS" **but the Index's Square and Lot columns described the affected property as Square 1601, Lot 0007 (the Square and Lot description for Sutton Towers Condominium).** As in the case of the Margolius TRUST, the Grantor/Grantee Index had never listed in the Grantor/Grantee Index's Square and Lot columns any conveyance to Mr. El-Erian of a property bearing the Square 1601, Lot 0007 description. Again, this shows that a prospective purchaser

would be on notice that documents related to the Property were
often listed in the Grantor/Grantee Index as related to the
Square and Lot numbers for the condominium building (Square 1601,
Lot 0007).  A reasonable searcher would realize later that
documents listed on the Grantor/Grantee Index as relating to
Square 1601, Lot 0007 likely related to the Property.

(ii).  *The Power of Attorney Filed on the Same Date as the
Deed of Trust and Listed on the Grantor/Grantee Index as Relating
to the Condominium Building*.

The Power of Attorney was indexed in the Grantor/Grantee
Index as relating to Square 1601, Lot 0007 (the Square and Lot
numbers for the Sutton Towers Condominium, in which the Property
is located).  Yet again, the Index did not reflect any prior
conveyance to the El-Erians of an interest in Square 1601, Lot
0007.  However, for the reasons already stated, a prospective
purchaser would be on notice that the Index includes documents
related to the Property that are indexed with reference to the
Square and Lot numbers for Sutton Towers Condominium (Square
1601, Lot 0007).  As a result, a reasonable purchaser would
examine this Power of Attorney.  Upon examining the Power of
Attorney, one would discover that it was for the purpose of
executing refinancing documents relating to the Property, and
that the only deed of trust recorded on the same date was the
*Deed of Trust* at issue.  Upon examining the *Deed of Trust* as the
only deed of trust of the same date, one would discover that it

related to the Property.  Therefore, as with the Notice of
Foreclosure and the Power of Attorney as listed on the Square and
Lot Index, the Power of Attorney as listed on the Grantor/Grantee
Index would put a prospective purchaser on inquiry notice of the
*Deed of Trust*.

C.

A SUBSEQUENT PURCHASER WOULD BE CHARGED WITH CONSTRUCTIVE NOTICE

In any event, even without all of these foregoing red flags
putting a purchaser on inquiry notice, a prospective purchaser
would be on constructive notice of the *Deed of Trust*.  A recorded
deed of trust provides constructive notice to subsequent
purchasers or lienors of all matters which would be disclosed by
examination of that deed of trust.  *See* Powell on Real Property
§ 82.01[3] (Michael Allan Wolf ed.).  As a result, putting aside
the issue of inquiry notice, a hypothetical purchaser would be on
constructive notice of the contents of the *Deed of Trust*, and
thus, like a purchaser with actual notice, would take subject to
the security interest in the Property created by the *Deed of
Trust*.

The trustee argues that a misindexed deed of trust does not
impart constructive notice of that deed of trust.  However, the
fact that the *Deed of Trust* was misindexed does not affect the
validity of its recordation.  Under District of Columbia law,
there is no statutory obligation that a lien be properly indexed

20

in order for it to be perfected.  Rather, the D.C. Code provides

that "[m]ortgages and deeds of trust to secure debts, conveying

any estate in land, shall be executed and may be acknowledged and

recorded in the same manner as absolute deeds," and they shall

take effect in the same manner as absolute deeds.  D.C. Code

§ 42-801.  With respect to absolute deeds, District of Columbia

law states:

> Any deed conveying real property in the District, or
> interest therein, or declaring or limiting any use or
> trust thereof, executed and acknowledged and certified as
> provided in §§ 42-101, 42-121 to 42-123, 42-306, and
> 42-602 and delivered to the person in whose favor the
> same is executed, shall be held to take effect from the
> date of the delivery thereof, except that as to creditors
> and subsequent bona fide purchasers and mortgagees
> without notice of said deed, and others interested in
> said property, it shall only take effect from the time of
> its delivery to the Recorder of Deeds for record.

D.C. Code § 42-401.  This provision is silent as to indexing.

Therefore, proper indexing is not an essential part of the record

of the conveyance, and as a result, a subsequent purchaser is

still charged with constructive notice of a recorded instrument

even if the instrument was not indexed properly.

The decision in *Armstrong v. Ashley*, 22 App. D.C. 368, 376

(D.C. Cir. 1903), *aff'd*, 204 U.S. 272, 27 S. Ct. 270, 51 L. Ed.

482 (1907), stands for this principle that a recorded, but

misindexed, instrument still provides constructive notice of the

contents of that instrument.  In *Armstrong*, the court, then known

as the Court of Appeals of the District of Columbia, held that an

index of property subject to suits in ejectment, maintained by a
court clerk without legal requirement, may not be relied upon,
and parties have notice of all that the court's dockets would
disclose.  As explained in the trial court's ruling:

> The entries on the records of the court, accessible to
> all who chose to examine them, would have informed any
> intelligent inquirer of the existence and condition of
> the suits.  Parties are not allowed, with such lights
> before them, to close their eyes and insist they did not
> see what was obvious upon ordinary inspection.

*Armstrong*, 22 App. D.C. at 376.  The appellants, however,
contended in the trial court that the clerk had misindexed some
of the ejectment suits.  *Armstrong*, 22 App. D.C. at 374.  The
trial court viewed that as insufficient to abrogate the
constructive notice of the ejectment suits provided by the
court's dockets:

> [B]eing improvised by the clerk, without legal
> requirement, it would be impossible to receive the index
> as competent evidence of the contents of the dockets; and
> no attorney would feel he had properly performed his duty
> in making a search, if he should content himself with
> running down that list, instead of examining the original
> entries of the ejectment suits in the legal dockets.
> With what justice can a party plaintiff in some of the
> cases be held answerable in any way for the omission from
> the list of the names of cases he has properly instituted
> and which were regularly entered on the appropriate court
> docket.  When the counsel has filed his declaration with
> the clerk he will have done all he is required to do, and
> whatever remains to be done in the way of indexing the
> cases is to be attended to by the clerk without any
> responsibility for the officer's omissions of officials
> on the part of the plaintiffs; and there is no ground for
> the charge that the plaintiffs in the suits were culpable
> because the clerk made mistakes.

*Armstrong*, 22 App. D.C. at 376-77.  On appeal, the appellate

22

court elaborated:

> The appellees were not responsible for the manner in
> which the clerk kept that index.  They had no control
> over it.  Nor does it appear even to have been a record
> required by law to be kept by the clerk.  The marginal
> memoranda at the head of the pages of the docket which
> contained the entries of their several suits were equally
> beyond their control. They or their attorney accomplished
> all that was required of them when they delivered their
> papers to the clerk, and those papers were filed, and a
> memorandum of the filing was entered by the clerk in the
> docket.

*Armstrong*, 22 App. D.C. at 383-84.  As the Supreme Court stated,

"the alleged failure of the clerk to properly index the

amendments was no answer to the failure on the part of the

searcher to examine the files for the purpose of seeing the

papers in existence in the actions."  *Armstrong v. Ashley*, 204

U.S. 272, 282, 27 S. Ct. 270, 274, 51 L. Ed. 482 (1907).

This principle evinced in *Armstrong* that misindexing by the

clerk does not make the instrument ineffective is in accord with

the case law in a majority of states finding that an instrument

becomes effective from the time it is left at the recorder's

office, because "indexing is merely a ministerial act, and

nonperformance or malperformance of that act does not prevent

constructive notice of a recorded, but improperly indexed,

document."  1 Patton and Palomar on Land Titles § 68 (3d ed.);

*see also* Powell on Real Property § 82.03[2][b][ii] ("[I]n the

majority of states, the courts have held that proper indexing is

not a necessary part of the recording process.").  As a result,

the improper indexing of the *Deed of Trust* does not invalidate
its recordation, and the trustee is charged with constructive
notice of its contents.

This case is similar to the case of *Hamilton v. Washington
Mut. Bank FA (In re Colon)*, 563 F.3d 1171 (10th Cir. 2009), in
which the Court of Appeals for the Tenth Circuit determined that
a prospective purchaser would be charged with constructive notice
of a mortgage even though the mortgage contained both a correct
and an incorrect description of the property and was indexed
using the incorrect description of the property at issue, the
debtors' house.  *Id.* at 1184-85.  In particular, the mortgage
correctly stated the house's address and its parcel
identification number, but it described the property using the
wrong Lot number (Lot 29 instead of Lot 79).  *Id.* at 1174.  As a
result, a reasonable search based on the name of the debtors
would have turned up the mortgage in question, but such a search
would not have indicated that the subject property was intended
to be encumbered, because the property description in the index
contained the wrong Lot number.  *Id.* at 1175.  Nevertheless,
applying Kansas law, the court of appeals determined that a
prospective purchaser would have notice of the mortgage burdening
the house.  *Id.* at 1182-83.  In reaching this result, the court
recognized that Kansas law requires indexing, that purchasers are
deemed to know the contents of recorded documents in the chain of

title, and that a purchaser "must examine each conveyance from a grantor (during the period of the grantor's ownership of the property of interest) to determine whether it is in the chain of title." *Id.* at 1182. Accordingly, the court concluded that a purchaser would locate the mortgage in the grantor and grantee indices and, upon reviewing the mortgage, would recognize that a problem existed because the Lot number did not refer to the same property as the address and parcel identification number. *Id.* at 1183. Consequently, a reasonably prudent purchaser would make inquiry and learn that the property was encumbered by the mortgage. *Id.*

The same reasoning applies in this case. A search of the Grantor/Grantee Index would reveal the *Deed of Trust*, even though it referred to the wrong Square and Lot numbers. As discussed previously, a review of that *Deed of Trust* would indicate that the Property was encumbered, or at the least, would lead a reasonably prudent purchaser to inquire which property the *Deed of Trust* encumbered. *See also Hildebrandt v. Hildebrandt*, 683 P.2d 1288, 1290 (Kan. Ct. App. 1984) (finding that a deed that contained both a correct and an incorrect section number for the property, but also contained the correct name of the property, was a sufficient description within the deed itself to impart constructive notice of the conveyance and the fact that the deed may not have been properly indexed did not prevent constructive

notice of the conveyance under Kansas law).  Therefore, the
misindexing of the *Deed of Trust* does not prevent it from
imparting constructive notice to subsequent purchasers, and the
trustee cannot avoid the lien based on § 544(a).

D.

THE TRUSTEE'S ESTOPPEL ARGUMENT

The trustee argues that Green Tree is estopped from
asserting the priority of the *Deed of Trust* due to the alleged
negligence in filing the *Deed of Trust* containing both a correct
and an erroneous Square and Lot number, which in turn allegedly
caused the misindexing of the *Deed of Trust*.  In support, the
trustee points to *Harris v. Maryland Nat'l Bank (In re Harris)*,
183 B.R. 657 (D.D.C. 1995).

*Harris* involved the priority of a deed of trust held by
Maryland National Bank ("MNB") that correctly identified the
property's street address and Lot number, but incorrectly
described the property as being in Square 452 instead of Square
1452.  *Id.* at 658.  As a result, although the deed of trust was
indexed in the Grantor/Grantee Index, the space for the Square
and Lot numbers contained the wrong Square number.  *Id.* at 658.
In addition, due to the error in the Square number, a search
limited to the Square and Lot Index would not have revealed the
deed of trust.  *Id.* at 658.  Harris, as debtor-in-possession
exercising the powers of a trustee in bankruptcy, sought to avoid

26

MNB's deed of trust under § 544(a).

The Bankruptcy Court held that the deed of trust gave constructive notice to subsequent purchasers and therefore could not be avoided under § 544(a).  In so finding, the Bankruptcy Court determined that proper indexing is not required as a statutory matter under District of Columbia law and that the improper indexing of the deed of trust did not invalidate its recordation.  *Harris v. Maryland Nat'l Bank (In re Harris)*, 165 B.R. 729, 732 (Bankr. D.D.C. 1994).  The Bankruptcy Court found that because the controlling statute was clear that misindexing of the deed does not defeat constructive notice of that deed, the parties do not have a right to rely on the contents of either index.  *Id.* at 732.  The Bankruptcy Court also rejected the argument that the holder of the misindexed lien, MNB, was estopped from claiming that the recordation of its lien provided notice to third parties.  *Id.* at 734.  Although the Bankruptcy Court acknowledged that the indexing error was MNB's fault, it found that equitable estoppel was inappropriate because, as a matter of law, "a party is not legally entitled to rely on the contents of the indexes maintained by the Recorder of Deeds." *Id.* at 736.  Therefore, any reliance on the error in the index

was not reasonable.  *Id.*[9]

On appeal, the District Court first decided that it need not
resolve the issue of "whether delivery of a deed of trust to the
Recorder of Deeds perfects it, irrespective of whether it is
correctly indexed or indexed at all."  *In re Harris*, 183 B.R. at
659.  The District Court found that it was "only necessary to
reach the narrower issue of whether a party in interest, such as
the holder of a lien (as distinguished from the Recorder), whose
negligence caused misindexing is estopped from asserting a
priority against another party who acted to his detriment in
reliance on the misindexing."  *Id.*  The District Court remanded
the case to the Bankruptcy Court to resolve the factual dispute
as to whether a reasonable lender would have looked beyond the
Square and Lot Index.

Nevertheless, by deciding that estoppel could be
appropriate, the District Court implied that a party could
reasonably rely on the contents of the index.  Consequently, the
District Court implicitly overruled the Bankruptcy Court's
holding that District of Columbia law treats a deed of trust as
perfected upon recordation, regardless of indexing.  In other

---

[9]  As in *In re Harris*, the trustee does not contend that the
mortgagee deliberately included an erroneous Square and Lot
number on the *Deed of Trust* in order to cause a misindexing of
the *Deed of Trust* and thereby to defraud subsequent parties.
Accordingly, the remedy of a constructive trust is not available.
*In re Harris*, 165 B.R. at 736 (citing *In re Auto-Train Corp.*, 53
B.R. 990, 995–96 (D.D.C. 1985)).

words, the District Court's decision assumed that it could be reasonable to rely on the contents of the index, and thereby determined that indexing could be an essential part of recording a deed under District of Columbia law.

This court respectfully disagrees with the District Court's holding in *In re Harris*. As a statutory matter, the law is clear in the District of Columbia that a deed is effective as to third parties upon its delivery to the Recorder of Deeds for recordation, and the statute says nothing about the indexing of that deed. To adopt a rule permitting a deed to be defeated in some instances based on misindexing would require the courts to decide precisely in what circumstances such a rule would apply to defeat a deed. That would require the courts to undertake the role of deciding which index should be used in title searches, or whether a deed provides constructive notice only upon proper indexing, or whether there are certain steps that a grantee can take towards assuring proper indexing of a deed such that the law should treat the grantee as immunized from the effects of any misindexing.[10] All of these are quasi-legislative functions that the courts ought not be shouldering. Therefore, I reject the

---

[10] Here, the grantee caused to be filed with the Office of Recorder of Deeds a *Real Property Recordation and Transfer Tax Form FP 7/C* which correctly described the property as having an address of "3101 New Mexico Avenue, NW #814" and as being Lot 3675 within Square 1601. Ought the grantee be charged with the failure of the Recorder of Deeds to index the *Deed of Trust* according to the proper description in the *Tax Form*?

29

trustee's argument that Green Tree is estopped from asserting that its *Deed of Trust* was perfected based on constructive notice; it is not reasonable for a purchaser or lien creditor to rely on an erroneous listing in the Grantor/Grantee Index or the Square and Lot Index of the property to which a deed relates.

As this case well illustrates, the Recorder of Deeds often makes mistakes in indexing deeds of trust (as illustrated by indexing some documents relating to the Property under the condominium building instead, and by not indexing the *Deed of Trust* as relating to the correct Square and Lot number listed in the *Deed of Trust* and in the *Tax Form*).  Unless and until the legislature adopts a statutory scheme making proper indexing an element of perfecting a recorded lien, a prospective purchaser of a property is on notice that it must examine all documents recorded that are in the chain of title, *i.e.*, recorded after the owner acquired the property.  *See In re Colon*, 563 F.3d at 1183 (explaining that a purchaser is charged with notice of the contents of every recorded instrument in the chain of title).

F.

THE RE-RECORDATION DATE DOES NOT
DEFEAT PERFECTION OF GREEN TREE'S LIEN AS AGAINST THE PLAINTIFF

The trustee's position is that the recordation of the original *Deed of Trust* was invalid, making the date of the re-recordation of the *Deed of Trust* the date that determines the priority of the liens.  The trustee asserts that because the *Deed*

30

*of Trust* was re-recorded after the chapter 7 trustee's lien arose, the trustee can avoid the *Deed of Trust*.  This argument relies on the principle that an improperly indexed deed does not give constructive notice to a subsequent purchaser or judgment lien creditor, a principle that this court has decided is incorrect.  The postpetition recording of the *Deed of Trust* does not have any bearing in this case on the priority of the *Deed of Trust* over a hypothetical bona fide purchaser or judgment lien creditor as of the commencement of the bankruptcy case on the petition date.

IV

For all of these reasons, the defendant's Motion for Summary Judgment will be granted, and the plaintiff's Motion for Summary Judgment will be denied.  A separate order follows.

[Signed and dated above.]

Copies to: Recipients of e-notification of orders.

**(Q) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the District of Columbia:
  SEE EXHIBIT 'A', ATTACHED HERETO AND MADE A PART HEREOF

Parcel ID Number: SQUARE 1607 LOT 0058       which currently has the address of
3101 NEW MEXICO AVE., NW #814                                    [Street]
Washington, District of Columbia 20016       [Zip Code] ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

31108056                 1000748-0031108056-0      Initials                31108056
-6A(DC) (0205).02                          Page 3 of 15                Form 3009 1/01 (rev. 6/02)

GT 000027

Case No.: 0100986-

## EXHIBIT A
## LEGAL DESCRIPTION

Unit 814 in the Condominium known as "Sutton Towers Condominium", according to the Declaration of Condominium dated September 25, 1981 and recorded September 30, 1981 as Instrument No. 31020, as amended by Corrective Amendment dated November 30, 1981 and recorded December 2, 1981 as Instrument No, 37376, and as further amended by Second Corrective Amendment dated September 29, 1982 and recorded October 13, 1982 as Instrument No. 26034, and by Third Corrective Amendment dated July 26, 1983 as Instrument NO. 23024, and by Fourth Confirmatory Amendment dated October 25, 1984 and recorded October 26, 1984 as Instrument No. 39192, and by Fifth Confirmatory Amendment dated May 6, 1985 and recorded May 24, 1985 as Instrument No. 18807, and by Seventh (Sixth) Corrective and Confirmatory Amendment  to the Declaration dated August 21, 1986 and recorded September 24, 1986 as Instrument No. 39599, and by Eight Corrective and Confirmatory Amendment to the Declaration dated June 24, 1987 and recorded July 17, 1987 as Instrument No. 38040, and by Ninth Amendment to the Declaration dated September 14, 1987 and recorded September 17, 1987 as Instrument No. 53005, and by Tenth Amendment to the Declaration dated November 13, 1987 and recorded November 19, 1987 as Instrument No. 65695; and the By-Laws of Condominium dated September 25, 1981 and recorded September 30, 1981 as Instrument No. 31021, as amended, among the Land Records of the District of Columbia, and as per plat recorded in the Office of the Surveyor for the District of Columbia in Condominium Book 29 at Page 23A, as amended in plat recorded in Condominium Book 31 at page 29.
Together with an exclusive assignment of limited common element Parking Space Nos. 319 & 320, and together with an undivided percentage share interest in the Common Elements of said Sutton Towers Condominium as set forth in said Declaration of Condominium and the Exhibits thereto.

Said condominium project is situate on Lot 7 in Square 1601 in the subdivision made by LAR Associates et al., as per plat recorded in Liber 167 at folio 127 in the Office of the Surveyor for the District of Columbia.

Said property being now known for assessment and taxation purposes as Lot 3675 in Square 1601.